STATE OF MAINE                                    SUPERIOR  COURT
PENOBSCOT, SS.                                    CIVIL ACTION
                                                  DOCKET NO CV-09-199
                                                  WRA - PEN - 5/31/2012

ELIZABETH McCUE - HERLIHY,

        Plaintiff,
              v.                                  JUDGMENT
UNIVERSITY OF MAINE SYSTEMS and
EASTERN MAINE MEDICAL CENTER,

        Defendant.


        Hearing was held on the plaintiff's negligence complaints on March 8 and 9,

2012. The plaintiff was present and represented by counsel, David Van Dyke, Esq.,

while representatives of the defendants were present and represented by counsel, Paul

Chaiken, Esq. and Steven J. Mogul, Esq. In this case, the plaintiff alleges that she slipped

while entering the recreation center at the University of Maine in Orono (UMO) on

November 6, 2007, and then slipped in a similar fashion while entering the Eastern

Maine Medical Center (EMMC) on November 16, 2007. In each instance, she alleges that

the defendant did not exercise ordinary care in maintaining the premises.

        To prove negligence, the plaintiff must prove that it is more likely than not that

the defendant was negligent and the negligence was a cause of plaintiff's injury and

consequent damages. Negligence, as applied to this type of case, includes continuing on

the premises an unsafe condition that an ordinary, careful person would not allow on

the premises in the same situation. *See*, Alexander, *Maine Jury Instruction Manual* § 7-62

(4th ed. 2010).  Alternatively, one could view this as a typical "slip and fall" case in

which a plaintiff must prove, in part, that there was a foreign substance on the floor that

created a foreseeable risk of injury. *See,* Alexander, *Maine Jury Instruction Manual* § 7-63

(4th ed. 2010). A duty of reasonable care is conferred upon a defendant when it knows or

1

should have known of a risk to invitees on its premises. *Lander v. Sears, Roebuck & Co.,* 141 Me. 422, 428, 44 A.2d 886, 888 (1945). The Court will evaluate the issue of negligence in each case separately.

1.UMO

The evidence in this case demonstrates that before the plaintiff entered the recreation center on a rainy evening, she walked on a textured surface in a courtyard area. As she approached the area of the entrance, she walked on a transitional section of polished concrete and then onto a metal grate, before entering the building through a door. When she placed her right foot on the concrete, she slipped, causing her leg to move forward to the grate. Although she did not fall, she experienced pain in the area of her right knee. An expert retained by the plaintiff tested the relevant area for slip resistance when wet, in an effort to duplicate the conditions at the time of the incident. He determined that its coefficient of friction was .37 and that the minimum coefficient sanctioned by the Life Safety Code was .50, indicating, it is argued, that this area was excessively slippery when wet.

Even if the Court believed all of this testimony, UMO was not negligent. UMO was not aware of the slippery condition when the polished concrete surface was wet and had no reason to be aware of the condition. Since there is no indication that the university failed to maintain the area properly, the claim is that the university was negligent in causing a building to be constructed with a floor that was too slippery when wet in this area. An examination of the relevant facts in this regard demonstrates that the plaintiff has failed to prove this form of negligence. The building had recently been completed and accepted by the University. The flooring material in the relevant area had been specified by the building's architect and had been installed by a certified installer. The manufacturer of the floor polishing system had tested the coefficient of

2

friction of the surface of the product when dry and when wet, and had published the results in technical materials that had been provided to the University's project manager. These materials indicated a coefficient of friction of .5 or above for a variety of materials coming in contact with the polished concrete surface, when wet. Furthermore, the building passed a full inspection by its architect before it was dedicated and opened. No evidence was presented that indicated that it was customary for an owner of such a building to do more than rely on technical publications and an architect's inspection to comply with a reasonable standard of care. Under a dangerous condition analysis, the plaintiff has not proved that, under the circumstances, an ordinary careful building owner would not have allowed the condition to exist on the premises. Under a slip and fall analysis, the plaintiff has failed to prove that the water on the floor surface created a foreseeable risk of injury, of which UMO was aware, or should have been aware.

2. EMMC

On November 15, 2007, Ms. McCue went to EMMC for a procedure unrelated to the injury she sustained at the recreation center. It had rained approximately nine hours before her arrival but was not raining as she approached the building to enter it. As she entered the building, plaintiff stepped on the door threshold, her right foot slid forward on an asphalt tile surface and then onto a floor mat. When her foot came in contact with the mat, the slipping movement ended abruptly, causing a sensation of pain in her right knee. A gap of exposed asphalt tile between the aluminum threshold and the mat was approximately 20 inches wide and, according to the same type of testing conducted by the same expert as in count I, the asphalt tile was slippery when wet, having a coefficient of friction of 4.15, below the .5 level. When Ms. McCue was entering the hospital she did not look down at the floor immediately prior to entering, or while entering.

3

This is a closer case. In *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me. 1996), a similar slip and fall case involving water on a floor surface, the Law Court set forth the appropriate analysis to be used in assessing whether a structure owner is negligent under these circumstances. The plaintiff must establish that the defendant breached its positive duty of exercising reasonable care in providing reasonably safe premises. A duty of care is conferred upon the structure owner when it knows or should have known of a risk on its premises. In *Currier*, a judgment as a matter of law for the defendant was reversed on appeal because, viewing the evidence in the light most favorable to the plaintiff, defendant's employees knew its tile floor was slippery when wet, knew that customers tracked water into the store, and were aware that it was raining at the time of the incident.

In this case, the Court finds that plaintiff has failed to prove that EMMC was negligent. Although the Court can find that the tile floor had a coefficient of friction that was .85 lower, when wet, than the minimum coefficient of friction suggested by the Life Safety Code, there is no evidence indicating that the hospital was aware that its floor was less slip-resistant when wet than recommended by that code. It is also not clear how slippery a floor having that coefficient of friction is, when compared to other vinyl tile surfaces, a common flooring material in public buildings. No evidence was offered that suggested the nature of the hospital's alleged lapse - whether the floor naturally lacked slip resistance, or whether the hospital's maintenance of the area was a factor in creating the alleged condition. Additionally, the plaintiff initiated the slip by stepping on the threshold and there is no evidence of any defect in that area that would increase the likelihood of a slip, and there was only approximately 20" of exposed vinyl tile upon which the defendant could possibly have slid after having slipped while placing her foot on the threshold. Furthermore, it had not rained for several hours when the

4

incident occurred, decreasing the foreseeability that moisture would be on the floor, let alone that the floor would be slippery. Because of these factors, the Court cannot find by a preponderance of the evidence that EMMC knew of the condition or should have known of this condition, and therefore the plaintiff has not established the defendant's duty.

The Court's Verdict Is:

Judgment for the defendant on Counts I and II.

Dated: May 31, 2012

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT

ELIZABETH MCCUE HERLIHY  - PLAINTIFF
299 FOURTH ST
OLD TOWN ME 04468
Attorney for: ELIZABETH MCCUE HERLIHY
DAVID J VAN DYKE  - RETAINED
HORNBLOWER LYNCH RABASCO & VANDYKE
261 ASH STREET
PO BOX 116
LEWISTON ME 04243-0116

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2009-00199

**DOCKET RECORD**

vs
UNIVERSITY OF MAINE SYSTEMS   UM ORONO CAMPUS - DEFENDANT

Attorney for: UNIVERSITY OF MAINE SYSTEMS   UM ORONO CAMPUS
PAUL CHAIKEN  - RETAINED
RUDMAN & WINCHELL
84 HARLOW ST
PO BOX 1401
BANGOR ME 04402-1401

EASTERN MAINE MEDICAL CENTER - DEFENDANT

Attorney for: EASTERN MAINE MEDICAL CENTER
STEVEN MOGUL  - RETAINED
GROSS MINSKY MOGAL PA
23 WATER ST SUITE 400
PO BOX 917
BANGOR ME 04402

Filing Document: COMPLAINT                    Minor Case Type: PROPERTY NEGLIGENCE
Filing Date: 09/21/2009

## Docket Events:
09/23/2009 FILING DOCUMENT - COMPLAINT FILED ON 09/21/2009

09/23/2009 Party(s):  ELIZABETH MCCUE HERLIHY
          ATTORNEY - RETAINED ENTERED ON 09/21/2009
          Plaintiff's Attorney: DAVID J VAN DYKE

09/23/2009 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 09/21/2009
          TO ATTORNEY FOR PLAINTIFF.

10/09/2009 Party(s):  EASTERN MAINE MEDICAL CENTER
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 09/25/2009
          ON DEFENDANT EASTERN MAINE MEDICAL CENTER BY LEONARD BIAMBALVO, CLERK/REGISTERED AGENT

10/09/2009 Party(s):  EASTERN MAINE MEDICAL CENTER
          SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/01/2009
          Plaintiff's Attorney:  DAVID J VAN DYKE

10/19/2009 Party(s):  EASTERN MAINE MEDICAL CENTER
          RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 10/14/2009
          BY DEFENDANT, EASTERN MAINE MEDICAL CENTER